IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

KEITH L. MCCLELLAN,                §
                                   §
                Petitioner,        §
                                   §
v.                                 §        No. 4:14-CV-894-A
                                   §
WILLIAM STEPHENS, Director,        §
Texas Department of Criminal       §
Justice, Correctional              §
Institutions Division,             §
                                   §
                Respondent.        §

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Keith L. McClellan, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against William Stephens, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be dismissed as time-barred, in part, and denied, in part.

### I. FACTUAL AND PROCEDURAL HISTORY

The state appellate court set forth the procedural and factual background of this case as follows:

In March 2005, a Tarrant County grand jury
indicted Appellant on charges of aggravated assault
with a deadly weapon. Pursuant to a plea bargain
agreement, the trial court placed Appellant on deferred
adjudication community supervision for five years
beginning January 19, 2006. In March 2010, the State
filed a petition to proceed to adjudication, alleging
in eight paragraphs that Appellant violated the terms
and conditions of his community supervision. The trial
court held a hearing on the State's petition to
adjudicate on July 7, 2010. Appellant pleaded "not
true" to each allegation.

At the hearing, Sergeant Gregory Morgan testified
that he was an investigator with the Hamilton Sheriff's
Department in Cincinnati, Ohio, and that in January
2010 Appellant became a "target" in an on-going
investigation of "a local group of individuals that
were taking stolen items in trade for heroin in
Cincinnati." With the help of a confidential informant,
officials recorded phone calls Appellant made and
received while in Cincinnati on January 12, 2010, in
which he offered to sell the informant heroin. During
these calls, the informant asked for two ounces of
heroin, and Appellant explained that he could sell him
a half ounce for $1000 and that another shipment would
be arriving the next day. Appellant then told the
informant he was on his way to meet him. During the
phone calls, a team of narcotics officers was
conducting surveillance outside the Cincinnati
residence where Appellant was staying. When Appellant
exited the residence and drove away, the narcotics team
followed.

Cincinnati Police Officer Chris Perry (assigned to
this regional narcotics team) testified that he stopped
Appellant at the request of the surveillance team that
same day, arrested him, and transported him to the jail
in the backseat of his marked squad car. Appellant
possessed $2200 in cash upon arrest. Officer Perry
testified that during the drive, Appellant was moving
around quite a bit, including bending at the waist, and
moving his feet around. When Officer Perry searched the

2

car, he found a balled-up plastic baggie in a corner of
the floorboard that had not been there before
Appellant's arrest. A chemist with the Hamilton County
crime laboratory determined the contents to be a half
ounce (14 grams) of heroin.

The narcotics team executed a search warrant for
the residence. Cincinnati Police Officer Paul Fangman
testified that officers found a .50 caliber Desert
Eagle pistol (with a loaded magazine inside) under a
couch cushion in the first floor living room of the
small, single-family, two-story residence. Upstairs,
Officer Fangman found a .9 millimeter handgun on top of
a nightstand in one of two bedrooms. In this bedroom,
Officer Fangman found a portfolio of documents on the
floor containing Appellant's birth certificate, bank
statements in Appellant's name, numerous receipts (some
showing partial credit card numbers that matched
Appellant's credit card number), and additional
personal paperwork, including several documents
regarding Appellant's Tarrant County community
supervision. Officer Fangman testified that it was very
common for drug dealers to have firearms because heroin
is very expensive, and "[d]rug traffickers are—are
afraid of each other due to the fact that there's often
robberies involved between drug dealers. Other drug
dealers know that—that they have something of value and
there's much money to be made selling heroin." In the
kitchen, officers found a digital scale and small
unused glassine bags. Sergeant Morgan testified that,
based on his training and experience, these types of
bags are used by drug dealers in Cincinnati to
distribute small amounts of heroin and cocaine, and
Officer Perry testified that both drug traffickers and
drug abusers often possess these types of scales.

Appellant's mother, Sandra McMorris, testified
that Appellant is very intelligent and bright, that she
was upset that he got "caught up in this mess with some
of his friends," and that "I really don't believe that
[Appellant] should serve a lot of time, sir. He's a
good boy. He really is, and he's been taking care of
me." McMorris testified that she and Appellant bought

3

junk vehicles, fixed them up, and sold them for a "nice
profit." McMorris acknowledged on cross-examination,
however, that she knew that the sheriff's department in
Ohio had seized approximately one hundred thousand
dollars from different bank accounts belonging to
Appellant, noting that "some of those bank accounts, I
know the money came from those sales of vehicles
because I assisted in selling some of those vehicles
here in the state of Texas."

The trial court found six of the eight paragraphs
in the petition true, adjudicated Appellant guilty, and
sentenced him to twenty years in prison. The trial
court found four new-offense allegations to be true,
including in part that on January 12-13, 2010, in Ohio
(Hamilton County) Appellant (1) altered, destroyed,
concealed, or removed heroin to impair its value or
availability as evidence in such proceeding or
investigation, knowing that an official proceeding or
investigation was in progress or was about to be or
likely to be instituted (allegation one); (2) offered
to sell fourteen grams of heroin (allegation three);
(3) knowingly prepared for shipment, shipped,
transported, delivered, or prepared for distribution
fourteen grams of heroin, when he knew or had
reasonable cause to believe that the heroin was
intended for sale or resale by Appellant or another
person (allegation four); and (4) knowingly obtained,
possessed or used fourteen grams of heroin (allegation
five). The trial court also found that Appellant
violated allegation seven by knowingly possessing a
firearm away from his residence on or about January 12,
2010.

(Adm. R., SH4-WR-81,926-01, 178, ECF No. 11-17 (footnotes

omitted.)

Petitioner did not appeal the nonadjudication judgement;

thus, the judgment became final under state law thirty-three days

4

later on Tuesday, February 21, 2006.[1, 2] *See* TEX. R. APP. P.
26.2(a)(1); *Manuel v. Texas*, 994 S.W.2d 658, 661-62 (Tex. Crim.
App. 1999). Petitioner appealed the trial court's judgment
adjudicating guilty, but on May 3, 2012, the Second Court of
Appeals affirmed the trial court's judgment. (Adm. R., Mem. Op.
1, 20, ECF No. 11-4.) The record does not indicate that
petitioner filed a petition for discretionary review in the Texas
Court of Criminal Appeals; thus, the judgment adjudicating guilt
became final under state law thirty-two days later on Monday,
June 4, 2012.[3] 28 U.S.C. § 2244(d)(1)(A); Tex. R. App. P.
68.2(a); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).
On May 2, 2013, petitioner filed a state habeas application for
writ of habeas corpus, raising one or more of the claims
presented here, which was denied by the Texas Court of Criminal

---

[1]February 18, 2006, fell on a Saturday and Monday, February 20, 2006,
was a federal holiday.

[2]Respondent argues that the nonadjudication judgment became final for
purposes of subsection (A) on January 19, 2006, the date the judgment was
filed, because petitioner waived his right to appeal, among other rights, as
part of the plea bargain agreement. (Resp't's Ans. 8, ECF No. 12.) A review of
relevant cases in this and other districts, however, reveals that under these
circumstances the limitations period starts after expiration of the statutory
appeal time. *See, e.g., Novak v. Quarterman,* No. 4:07-CV-043-Y, 2007 WL
1953439, at *3 n. 2 (N.D.Tex. June 26, 2007); *Greer v. Quarterman,* No.
H-06-1742, 2007 WL 2140205, at *2 (S.D.Tex. July 24, 2007); *Flournoy v.
Director,* No. 6:06-CV-555, 2007 WL 545684, at *3 (E.D.Tex. Feb. 16, 2007);
*Hennington v. Johnson,* No. 4:00-CV-0292-A, 2001 WL 210405, at *2 (N.D.Tex.
Feb. 28, 2001).

[3]June 2, 2012, fell on a Saturday.

5

Appeals on October 15, 2014, without written order.[4] (*Id.*, SH1-

WR-81,926-01, ECF No. 11-13.) Petitioner filed this federal

petition for writ of habeas corpus on October 31, 2014.[5]

## II. ISSUES

Petitioner raises three grounds for habeas relief:

(1) his Sixth Amendment right to counsel was violated
by counsel's failure to fully inform him of the "lawful
difference" between deferred adjudication probation and
straight probation;

(2) his Sixth Amendment right to counsel was violated
by counsel's admission of petitioner's guilt during the
adjudication hearing without petitioner's knowledge or
consent; and

(3) his Sixth Amendment right to counsel was violated
by counsel's failure to provide a defense and to
advocate his cause during the adjudication hearing.

(Pet. 7, ECF No. 1.)

## III. RULE 5 STATEMENT

Respondent believes that petitioner has exhausted his state

court remedies as to the grounds raised and that the petition is

---

[4]Petitioner's state habeas application is deemed filed when placed in
the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir.
2013). The application does not state the date petitioner placed the document
in the prison mailing system, however the "Inmate's Declaration" on page 12 of
the application was signed by petitioner on May 2, 2013; thus, for purposes of
this opinion, petitioner's state habeas application is deemed filed on May 2,
2013. (*Id.*, SH4-WR-81,926-01, 13, ECF No. 11-16.)

[5]Similarly, petitioner's federal habeas petition is deemed filed when
placed in the prison mailing system. *Spotville v. Cain,* 149 F.3d 374, 377 (5th
Cir. 1998).

not subject to the successive-petition bar. (Resp't's Answer 4, No. 12.) He does believe however that petitioner's first ground is barred by the statute of limitations and should be dismissed. (*Id.* at 5-12.)

## IV.   STATUTE OF LIMITATIONS

Title 28 U.S.C. § 2244(d) imposes a one-year statute of limitations for filing a petition for federal habeas corpus relief. 28 U.S.C. § 2244(d). Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the

exercise of due diligence.

(2) The time during which a properly filed
application for State post-conviction or other
collateral review with respect to the pertinent
judgment or claim is pending shall not be counted
toward any period of limitation under this subsection.

*Id.* § 2244(d)(1)-(2).

As to petitioner's first ground, alleging that trial counsel
was ineffective by failing to fully inform him of the difference
between deferred adjudication probation and straight probation,
the one-year limitations period began to run on the date the
nonadjudication judgment became final upon expiration of the time
that petitioner had for filing a notice of appeal on February 21,
2006, and expired one year later on February 21, 2007, absent any
applicable tolling.[6] *Id.* § 2244(d)(1)(A); *Caldwell v. Dretke*, 429
F.3d 521, 530 (5th Cir. 2005); *Flanagan v. Johnson*, 154 F.3d 196,
200-02 (5th Cir. 1998). Petitioner's postconviction state habeas
application, filed on May 2, 2013, over six years after the
limitations period had already expired, did not operate to toll

---

[6]Petitioner argues that a nonadjudication judgment does not become final
until (a) the date upon which a defendant successfully completes his term of
probation or (b) the date upon which the state moves to and the court
adjudicates his guilt. (Pet'r's Reply 4.) However, in this circuit, a state
court order of deferred adjudication community supervision or straight
probation is a final judgment for purposes of triggering the federal habeas
limitations period. *Caldwell v. Dretke,* 429 F.3d 521, 528-29 (5th Cir. 2005),
*cert denied,* 549 U.S. 993 (2006).

the limitations period for purposes of § 2244(d)(2). *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). Nor has petitioner demonstrated that he is entitled to equitable tolling. For equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way'" and prevented him from filing a timely petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408 (2005)). Petitioner makes no such showing. "Equity is not intended for those who sleep on their rights." *Fisher v. Johnson,* 174 F.3d 710, 715 (5th Cir. 1999). Thus, the petition is time-barred as to petitioner's first ground.

## V. DISCUSSION

### A. Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court.

9

*Harrington v. Richter*, 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, as in this case, it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend*

10

*v. Sain*, 372 U.S. 293, 314 (1963)[7]; *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir.2002); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

**B. Ineffective Assistance**

Petitioner was represented during the adjudication proceedings by Andrew Platt. Under grounds two and three, petitioner claims counsel was ineffective by admitting petitioner's guilt to possession of a controlled substance without his knowledge or consent and by failing to present a defense and advocate his cause due to petitioner's late payment of attorney's fees. (Pet. 6-7, ECF No. 1.) During the state habeas proceedings, counsel responded to petitioner's allegations, in relevant part, as follows:

> Keith McClellan was never offered a reasonable deal in exchange for his plea of true to violating his probation. The offer was always 20 years which was the maximum sentence possible. He believed if he entered a plea of true to each paragraph in his Motion to Adjudicate and allowed the judge to sentence him, the judge would be lenient. After considerable discussions, we finally decided to contest the worst-looking paragraphs, but not to contest all the elements of all the paragraphs. For example, we might contest that he possessed a controlled substance, but not contest the substance was actually a controlled substance. We agreed to the elements we believed were inevitable and fought those portions of the paragraphs where we

---

[7]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

11

thought we had a chance. This strategy of agreeing to
evidence we believed was inevitable would show the
judge our arguments against the most damning paragraphs
were credible, make Mr. McClellan look more reasonable
and might cause the judge to sentence him at the lower
end of the range. I contested, investigated and fought
for every inch I thought was available. Mr. McClelland
had such a positive attitude about this strategy and
expressed his gratitude for what I was doing before and
during the hearing that I can only believe he filed
this claim because he has no other options.

    I did encourage him to hire James Wilson because
Mr. McClellan mentioned it as an option several times
when I would ask for our agreed upon payment, but I
would never, *never,* abandon any client for not paying
and I did not abandon him. I have told clients that I'm
losing interest in working on their cases for free, but
I never lost interest in his case because of his
refusal to pay me. I would have done anything to get
him out of his predicament.

    .  .  .

(Adm. R., SH4-WR-81,926-01, 126-27, ECF No. 11-16.)

A criminal defendant has a constitutional right to the

effective assistance of counsel at trial. U.S. CONST. amend. VI,

XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v.

Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance

claim is governed by the familiar standard set forth in

*Strickland v. Washington*. 466 U.S. at 668. To establish

ineffective assistance of counsel a petitioner must show (1) that

counsel's performance fell below an objective standard of

reasonableness, and (2) that but for counsel's deficient

12

performance the result of the proceeding would have been different. *Id.* at 688.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state court record. *Harrington,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Applying *Strickland* and relevant state law, the state appellate court addressed petitioner's first claim as follows:

13

Appellant asserts that his counsel was ineffective during closing argument by "admit[ting] the primary issue in the case;" i.e., that Appellant possessed heroin. Appellant asserts that this admission "forced the Trial Court to find all of the State's allegations concerning possession and delivery of drugs and weapons to be true" and that the outcome of the case would have been different if counsel had not admitted his guilt. We disagree.

To establish ineffective assistance of counsel Appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. Appellant has the burden to establish both of these prongs by a preponderance of the evidence, and a failure to make either showing defeats an ineffectiveness claim. We presume that counsel's conduct falls within the wide range of reasonable professional assistance, and we will find counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it.

After Appellant pleaded "not true" to the State's first allegation, the prosecutor interjected that Appellant had previously represented he would plead true to the allegations and that therefore the State had not scheduled the Ohio chemist (who tested the confiscated drugs) for the hearing. The prosecutor explained that he would need a continuance if Appellant persisted in contesting the allegations. Appellant's counsel then recounted his statements to the prosecutor that, "if you're bringing one [witness], bring them all" and "we'll be willing to plead true if—if you'd offer us something." Counsel also stated, "[W]hen the offer was 15 [years], I said, bring them all." When the trial court asked Appellant's counsel whether he was disputing that the material seized in the Ohio patrol car was contraband, counsel stated, "Yeah . . . we're disputing everything . . . [W]e tried to make an

14

agreement beforehand, and when it was clear there was never going to be anything that would—I would consider a reasonable offer for any court in this courthouse, I said, bring [on the witnesses]." The trial court then proceeded with the hearing, noting that the State could produce the chemist at a later time. Throughout the hearing, Appellant's counsel appeared to vigorously challenge the State's evidence and defend Appellant's interests. After the State presented several witnesses, the trial court granted the State's motion for continuance. A month later, the hearing resumed, and Appellant's counsel (with Appellant's express agreement) stipulated to the Hamilton County, Ohio, lab report, which provided that the "brown solid material" contained in a plastic bag and submitted for testing in the instant case was heroin and weighed 13.98 grams. The State subsequently rested its case, and Appellant's counsel stated he would present mitigation testimony. Appellant's mother, girlfriend, and cousin testified. In closing argument, Appellant's counsel argued to the trial court (with the challenged portion of the argument italicized) that,

> It was [Appellant's] intention all along to—to plead true to—to the possession. And once this—once this hearing got started—I wasn't sure that he made—we had a tape with maybe his voice on it with no one setting any kind [of] foundation for it of the—the person who made the call and—and started this—and I say, "entrapment." I don't mean the legal reason but—the legal version—but to talk to him in—into this deal—and is it him and I never [c]ould hear the word "heroin." I never hear dollar amounts and they said, oh, he's using code, but I didn't think that code's explained sufficiently, and I couldn't understand what they were saying, anyway. But at—at [Appellant's] request, he said—he said, [counsel], it was me, of course, it was me. And that—that's what I was doing. He doesn't want me to—to—to take that route where I'm contesting this whole thing.

15

. . .

[Defense Counsel]: *So since [Appellant is]—at his request, he's—he's admitting [to] his possession of it, I'd like to draw your attention to—*

THE COURT: *Okay, now, let me—let me just stop you there. Are you saying he wishes to change his plea to true?*

[Defense Counsel]: *No. This is—this is just my argument.*

THE COURT: *Well, if you want to have—if you want to articulate that he wants to—he's pleading true or he's admitting that, that's one thing. But if you're—if he isn't willing to do that, I don't think you can argue that, can you?*

[Defense Counsel]: *I don't know.*

THE COURT: *Okay. I'll take whatever you say under advisement.*

[Defense Counsel]: I think it's—okay. I think it is true and I think it will be true.

Immediately thereafter, Appellant personally addressed the trial court (with its permission):

[W]hen I did get arrested for this charge in Ohio, you know, my whole thing was, you know, I need some help.

. . .

[I] know I hurt my family and hurt myself, you know. I mean, I don't have any intentions on, you know, playing any games.

16

I come at the mercy of the Court and I'm
just petitioning for leniency. I really was
trying to get some drug rehabilitation. I
never had drug rehab, you know. I've been
using drugs since high school, you know. I
kicked the marijuana but I'm going to need
some help with the heroin because it's not,
you know, it's not as easy as I thought, you
know.

Relying on *Long v. State* and *Hutchinson v. State,*
Appellant asserts that a "stipulation or argument which
destroys appellant's only defense cannot be classified
as 'trial strategy.'" In *Long*, trial counsel presented
an insanity defense but then stipulated to a police
report that showed that Long had become voluntarily
intoxicated, thereby annulling his defense strategy.
The trial court then "expressly based its rejection of
appellant's defense on the damaging stipulated
statement regarding voluntary intoxication." The
*Hutchinson* case involved a jury trial in which defense
counsel presented no evidence in support of the
appellant's guilt and then effectively "confessed the
guilt of his client" by stating in closing argument,
"That's the way the system works. The prosecutor brings
you the evidence against him. I bring you whatever
evidence I have in his favor."

Unlike in *Long* and *Hutchinson,* the record in the
instant case does not support Appellant's ineffective
assistance claim. In personally addressing the trial
court, Appellant made admissions similar to the one he
now criticizes his counsel for making. Notably, both
counsel's and Appellant's admissions appear to be
strategic. The record indicates that Appellant and his
counsel grappled with how best to approach the
adjudication hearing and that during the month-long
break they determined that the best strategy was to
request leniency in the face of considerable evidence
that Appellant violated several of the conditions and
terms of his community supervision, including that he
committed drug-related offenses in Ohio for which he
was arrested and charged by indictment.

17

Moreover, the record indicates that counsel did not abandon his role as an advocate. Indeed, he argued that the State had not proven the seventh allegation—that Appellant knowingly possessed a firearm—or the eighth allegation—that Appellant failed to complete his minimum monthly number of hours of community service. The trial court found the eighth allegation to be "not true," and also found "not true" the sixth allegation—that Appellant failed to avoid injurious or vicious habits on or about January 12, 2010. Counsel also made several arguments regarding why the trial court should sentence Appellant in the lower half of the punishment range. Without additional explanation, we cannot conclude trial counsel pursued an unsound trial strategy. Thus, Appellant fails to rebut the presumption that counsel made all significant decisions in the exercise of reasonable professional judgment; therefore, he fails to show that trial counsel's performance fell below an objective standard of reasonableness.

Additionally, the record does not show that the outcome would have been different had counsel not made the challenged argument. Despite counsel's admission, the State proved by a preponderance of the evidence (separate and apart from any admissions by Appellant's counsel) that Appellant violated several of the terms and conditions of his community supervision. Further, in revoking Appellant's community supervision and imposing a twenty-year sentence, the trial court emphasized its concern about Appellant's drug dealing, of which there was an abundance of evidence. Based on the record before us, we cannot say that the outcome of the proceeding would have been different if counsel had not admitted to Appellant's heroin possession.

(Adm. R., Mem. Op. 13-19, ECF No. 11-4 (emphasis in original) (citations omitted).)

Further, based on counsel's affidavit and the documentary record, the state habeas judge found that counsel's strategy to

18

contest only the most damning allegations so that petitioner would appear more reasonable to the trial court judge was a reasonable professional judgment; that counsel presented those legal arguments which he believed had merit; and that counsel did not abandon petitioner or threaten to abandon petitioner because he had not paid his legal fees. (*Id.* at 144, 176.) Applying the *Strickland* standard, the habeas court concluded that counsel advised petitioner regarding the adjudication process and his legal options, that counsel's strategic and tactical decisions made after a thorough investigation of the law and facts "are virtually unchallengeable, and that counsel provided adequate representation. (*Id.* at 146.) Additionally, the court concluded that based on the record, petitioner had not shown a reasonable probability that, but for the alleged acts of misconduct, the result of his adjudication and sentencing would have been different. (*Id.*) In turn, the Texas Court of Criminal Appeals denied relief without written order. Petitioner fails to rebut the presumed correctness of the state court's factual findings or demonstrate that the state courts' determination of the claims was contrary to or involved an unreasonable application of *Strickland*.

For the reasons discussed herein,

The court ORDERS that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, dismissed as time-barred as to ground one and denied as to grounds two and three. The court further ORDERS that a certificate of appealability be, and is hereby, denied.

SIGNED March **23**, 2016.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

20